UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL MCCLOUD,

       Plaintiff,

   -against-

MARK S. COSSUTO, JOSEPH J. LORENZI,
OMAR HASHMI, and MICHAEL CHACHURA,

       Defendants.
-----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**24 CV 3372 (HG)(LB)**

**BLOOM, United States Magistrate Judge:**

 *Pro se* plaintiff Michael McCloud brings this fee-paid civil rights action against defendants Assistant District Attorney ("ADA") Michael Chachura, Police Officer Joseph J. Lorenzi, physician Omar Hashmi, and attorney Mark S. Cossuto.[1] Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that defendants violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Compl., ECF No. 1. Plaintiff also asserts a conspiracy claim under 18 U.S.C. § 241. Id. Defendants Chachura and Lorenzi move to dismiss plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 24. The Honorable Hector Gonzalez referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). ECF Order dated November 14, 2024. For the reasons set forth below, I respectfully recommend that defendants' motion should be granted in part and denied in part. I also respectfully recommend that plaintiff's claims against defendants Hashmi and Cossuto should be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

**BACKGROUND**

 Plaintiff's complaint arises from his February 2, 2023 arrest and subsequent prosecution in Kings County Criminal Court for driving while intoxicated ("DWI"). The following allegations

---

[1] Plaintiff's complaint also named Judges Dale Fong-Frederick and K. Ward as defendants. ECF No. 1. However, plaintiff's claims against these defendants were dismissed. ECF No. 5.

are drawn from plaintiff's complaint and amended complaint.[2] Officer Lorenzi arrested plaintiff for DWI without probable cause, causing him to be jailed for one day. Compl., ECF No. 1 at 5; Am. Compl., ECF No 21 ¶ 1. Lorenzi then took plaintiff to the Brooklyn Hospital Center and handcuffed plaintiff to the hospital bed rails. Id. ¶ 2. Lorenzi held plaintiff's right arm so he could not move and defendant Doctor Hashmi injected drugs into his arm by force, knocking plaintiff out. Hashmi then drew a blood sample from plaintiff's arm without his consent. Id. The blood sample was used against plaintiff in his subsequent DWI prosecution. Id. ¶ 3.

Plaintiff alleges that defendant Cossuto, plaintiff's defense attorney in his DWI prosecution, "gave Plaintiff ineffective, inadequate assistance of counsel" in various ways.[3] ECF No. 1 at 1-5. Plaintiff also alleges that defendants Cossuto, Lorenzi, Hashmi, and Chachura conspired "to cover up the fact that defendants Hashmi and Lorenzi withdrew [plaintiff's] blood by force." Id. at 4. Plaintiff further claims that defendants Cossuto, Chachura, and Ward violated his rights because they "knew I have a hearing disability and they knew I could not hear everything being said in courts." Id. at 5. Finally, plaintiff states that he was improperly represented by Kings County Legal Aid during part of his DWI, although Legal Aid had said they could not represent him in a prior case due to a conflict of interest. Id. Plaintiff alleges that defendants Cossuto and Chachura "discussed that issue and . . . decided to keep that buried." Id. Plaintiff was "adjudicated, aggravated D.W.I." and sentenced to three years of probation. ECF No. 1 at 3. During his

---

[2] Plaintiff filed, with the Court's leave, a one-page amended complaint. ECF No. 21. On November 20, 2024, plaintiff filed a second "amended complaint in regards to defendant Mark S. Cossuto." ECF No. 29. The Court rejected this filing, stating that "plaintiff cannot add to his complaint in this piecemeal fashion," and ordered plaintiff to file any motion to amend his complaint by December 20, 2024. ECF No. 32. After plaintiff failed to timely move to amend, the Court stated that "[i]n light of plaintiff's *pro se* status, the Court will in this instance only consider plaintiff's amended complaint at ECF No. 21 as a supplement to the original complaint." ECF No. 35.

[3] I do not address plaintiff's allegations against Cossuto in detail because the claims against Cossuto should be dismissed pursuant to Fed. R. Civ. P. 4(m). Likewise, plaintiff's allegations against dismissed defendants Judge Ward and Judge Fong-Frederick are not set forth in detail. For a summary of plaintiff's allegations against Cossuto, Judge Ward, and Judge Fong-Frederick, see ECF No. 5 at 2.

prosecution, plaintiff traveled by bus and train from his home in Virginia approximately 40 times to appear in court, causing him to contract Covid-19 and pneumonia. Id. at 1.

Liberally construed, plaintiff asserts claims under § 1983 for false arrest against defendant Lorenzi; malicious prosecution against defendants Lorenzi and Chachura; unreasonable search and seizure and excessive force against defendants Lorenzi and Hashmi; due process violations against defendants Lorenzi, Chachura, Hashmi, and Cossuto; Sixth Amendment violations against Cossuto; and conspiracy to deprive plaintiff of his civil rights against Chachura and Cossuto.

Plaintiff filed his complaint and paid the filing fee on May 7, 2024. ECF Nos. 1-2. On June 24, 2024, plaintiff's claims against the defendant Judges were dismissed. ECF No. 5. On August 30, 2024, defendants Chachura and Lorenzi filed a pre-motion conference request regarding their proposed motion to dismiss. ECF No. 17. After plaintiff filed a response, ECF No. 18, the Court set a briefing schedule for the motion to dismiss and granted plaintiff leave to amend his complaint. ECF Order dated September 23, 2024. Plaintiff filed a one-page amended complaint on October 2, 2024. ECF No. 21. On November 13, 2024, defendants Lorenzi and Chachura filed their motion to dismiss.[4] ECF Nos. 24-27. Plaintiff filed his opposition on December 3, 2024. ECF No. 31. On Friday, January 3, 2025, Lorenzi and Chachura requested an extension of time to file their reply, which was due the following Monday, January 6, 2025. ECF No. 33. The Court denied defendants' request and deemed the motion fully briefed. ECF No. 34.

Defendants move to dismiss plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 24. Defendants also submit body worn camera video footage from the day of plaintiff's arrest and invite the Court to *sua sponte* convert the motion to a motion for summary judgment under Rule 56. Defs.' Mem. of L., ECF No. 26 at 8; ECF Nos. 26-3 and

---

[4] Defendants' deadline to file their motion to dismiss was November 12, 2024. The Court excuses this minimal delay.

26-4. First, defendants argue generally that the amended complaint "fails to plainly identify a single cause of action that Plaintiff intends to bring." ECF No. 26 at 9-10. Defendants then state that any false arrest or malicious prosecution claims are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). ECF No. 26 at 10-11. Defendants argue that any unreasonable search and seizure claim fails for three reasons: (1) plaintiff explicitly consented to a blood test, (2) a blood sample is a lawful search incident to an arrest for driving while intoxicated, and (3) plaintiff's consent was implied by N.Y. Veh. & Traf. Law § 1194(2)(a). ECF No. 26 at 11-13. Defendants also argue that the amended complaint does not state a Fourteenth Amendment claim based on plaintiff's blood sample, or alternatively that such claim would be barred by <u>Heck</u>. <u>Id.</u> at 13-15. Finally, defendants state that plaintiff has not alleged personal involvement by defendant ADA Chachura beyond a conclusory statement that Chachura violated plaintiff's rights. <u>Id.</u> at 15-16.

In opposition, plaintiff disputes some of defendants' arguments and clarifies aspects of his claims. ECF No. 31. First, plaintiff states that he does not assert claims of false arrest or false imprisonment. <u>Id.</u> ¶ 1. He also clarifies that he pled guilty to the DWI charge. <u>Id.</u> ¶ 7.[5] He states again that he did not consent to have his blood drawn and alleges in further detail that his blood was taken with "brutal force." <u>Id.</u> ¶¶ 8, 11, 24-26. Plaintiff also claims for the first time that the drugs that Hashmi and Lorenzi injected into him caused "a false reading in the blood test." <u>Id.</u> ¶ 23. Separately, plaintiff references and attaches his purported second amended complaint, which includes more detailed allegations regarding a conspiracy between defendants Cossuto and

---

[5] Plaintiff alleges that defendants' counsel Assistant Corporation Counsel Mamoon Saleemi "lied in a business letter . . . when he stated the D.W.I. case was dismissed and sealed." ECF No. 31 ¶ 4. Plaintiff attaches the letter in question, which states that "[i]f, as alleged, the underlying criminal charges against [you] have been dismissed, all records pertaining to your arrest have been sealed pursuant to New York Criminal Procedure Law §§ 160.50 and/or 160.55." <u>Id.</u> at 9. This is a form letter that the Office of the Corporation Counsel ("the Office") sends to plaintiffs who assert claims related to criminal charges that were dismissed, requesting that plaintiff sign a release permitting the Office to review relevant criminal records. Plaintiff did not allege that his DWI charge was dismissed, so the Office seems to have sent this form letter to plaintiff in error. The Court understands that this letter may have confused plaintiff, but the Office's letter does not state that plaintiff's DWI charges were dismissed.

Lorenzi. Id. ¶ 20.[6] Finally, plaintiff objects that defendants' motion does not include sworn statements from defendants, as well as particular items of evidence. Id. ¶¶ 10-16, 18-19, 27, 29. Plaintiff also states that he was unable to view the video disc containing body worn camera footage that defendants sent him because he "do[es] not have a system to view what is on it." Id. ¶ 17.

## STANDARD OF REVIEW

A court considering a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). Furthermore, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Meadows v. United Servs., Inc., 963 F.3d 240, 243 (2d Cir. 2020) (citation omitted). However, the Court need not accept legal conclusions in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

---

[6] As discussed above, the Court rejected this amendment and directed plaintiff that he would need to move for leave to file a second amended complaint. Plaintiff never did so.

## DISCUSSION

### I.    Defendants' Motion Should Not Be Converted

On a motion to dismiss, the Court may consider the complaint, documents attached to the complaint, documents incorporated in the complaint by reference, and documents that the complaint "relies heavily upon" and are "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). The Court may also consider "matters of which judicial notice may be taken," such as public records, but only "to determine what statements [the public records] contained . . . not for the truth of the matters asserted." Awelewa v. New York City, No. 11-CV-778 (NRB), 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012)[7] (quoting Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)).

Defendants submit plaintiff's arrest report and two body worn camera videos. ECF Nos. 26-2 to 26-4. On a motion to dismiss, the Court may consider the arrest report for the fact that it exists but not for the truth of statements contained within it.[8] See Bey v. Antoine, No. 19-CV-1877 (PKC)(RER), 2021 WL 3725985, at *7 (E.D.N.Y. Aug. 23, 2021). The Court cannot consider the body worn camera video on a motion to dismiss. O'Brien v. City of Syracuse, No. 5:22-CV-948 (MAD)(TWD), 2023 WL 6066036, at *6 (N.D.N.Y. Sept. 18, 2023).

The Court may consider these items of evidence if the Court converts the motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). For the Court to do so, Rule 12(d) requires that the nonmoving pro se party be given "'unequivocal' notice of the meaning and consequences of conversion to summary judgment," Hernandez v. Coffey, 582 F.3d 303, 307-08 (2d Cir. 2009), and must have "a reasonable opportunity to present all material that is pertinent to

---

[7] The Clerk of Court is respectfully directed to send plaintiff the attached copies of all the unreported cases cited herein.

[8] Bey notes that "some courts in this Circuit have declined to judicially notice arrest reports altogether" when it is not clear that the arrest report was in fact a public record. 2021 WL 3725985 at *7. However, plaintiff's arrest report appears to be a public record and does not appear to contain sealed information.

the motion." Palin v. New York Times Co., 940 F.3d 804, 810 (2d Cir. 2019). If proper notice is given, the decision whether to convert to a motion for summary judgment is left to the Court's discretion. Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351, 357 (S.D.N.Y. 2016). "A court may also convert only part of a 12(b)(6) motion into a Rule 56 motion." Id. A motion for summary judgment before any discovery has taken place is usually premature, and courts in the Second Circuit have granted summary judgment "[o]nly in the rarest of cases." Nat'l Jewish Democratic Council v. Adelson, 417 F. Supp. 3d 416, 432 (S.D.N.Y. 2019) (quoting Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000)).

The Court should not convert defendants' motion to one for summary judgment. Defendants served plaintiff the requisite notice pursuant to Local Civil Rule 12.1 regarding the nature and consequences of defendants' putative summary judgment motion, satisfying Rule 12(d)'s notice requirement. ECF No. 27. However, it would be inappropriate to convert this motion to a motion for summary judgment. First, plaintiff was unable to view the body worn camera videos. ECF No. 31 ¶ 17. This alone weighs against considering the videos: plaintiff was unable to address their contents in his response.[9] Furthermore, defendants' submissions are too thin a factual record for summary judgment. As plaintiff points out, defendants claim that plaintiff gave written consent to the blood test, but defendants do not submit the purported consent form. Defendants also do not submit body worn camera videos from other officers involved in plaintiff's arrest. ECF No. 31 ¶¶ 11, 18; id. at 4 (pretrial notice in plaintiff's DWI case listing relevant body worn camera videos). This reflects that plaintiff has not had "the opportunity, through discovery, to ensure that he has been provided with all relevant videos" and other evidence. O'Brien v. City

---

[9] A party opposing a motion converted to summary judgment must have been given "a reasonable opportunity to meet facts outside the pleadings." Hernandez, 582 F.3d at 307 (citation omitted). While defendants did send plaintiff the videos on a disc, he states that he "do[es] not have a system to view what is on" the disc. ECF No. 31 ¶ 17. The Court need not reach whether plaintiff made reasonable attempts to view the disc's contents on the instant motion.

of Syracuse, No. 5:22-CV-948 (MAD)(TWD), 2023 WL 6066036, at *7 (N.D.N.Y. Sept. 18, 2023) (declining to convert 12(b)(6) motion to summary judgment motion); see also Fed. R. Civ. P. 56(d) (providing that the Court may deny summary judgment when the nonmovant "cannot present facts essential to justify its opposition"). Accordingly, the Court should not consider defendants' motion as a motion for summary judgment. For purposes of this Report and Recommendation, the Court does not consider the body worn camera videos.

## II.    Defendants' Rule 8(a) Argument

Defendants first argue generally that plaintiff's amended complaint should be dismissed for failure to meet the Rule 8(a) pleading standard set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).[10] Defendants maintain that plaintiff "does not state what specific rights plaintiff claims defendants Chachura and Lorenzi violated" and that the complaint does not include "any factual context." ECF No. 26 at 9-10. Notably, defendants' arguments refer only to plaintiff's amended complaint.[11] Id.

Even looking only at the amended complaint, plaintiff alleges sufficient facts to state a facially plausible claim. Plaintiff states that Lorenzi held plaintiff's "right arm so [he] could not move" while defendant Doctor Hashmi injected sedative drugs into his arm, and then drew blood from plaintiff's arm "by force, while [plaintiff] was knocked out." Am. Compl., ECF No. 21 ¶ 2. Defendants' Iqbal argument does not acknowledge these allegations, and liberally construed, they plausibly raise a Fourth Amendment claim for unreasonable search and seizure and excessive force. See infra Parts III-VI.

---

[10] Fed. R. Civ. P. 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."
[11] Defendants attach plaintiff's original complaint as an exhibit to their motion to dismiss, but they reference it only for the allegation that plaintiff was convicted on a DWI charge. ECF No. 26 at 7.

Moreover, defendants fail to address allegations in plaintiff's original complaint.[12] Ordinarily, an amended complaint supersedes the original complaint in its entirety. Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 303 (2d Cir. 2020). However, courts must "make 'reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of her or his lack of legal training.'" Colorado Capital v. Owens, 227 F.R.D. 181, 193 (E.D.N.Y. 2005) (citation omitted). Here, plaintiff's amended complaint adds details to some of the events alleged in his original complaint but does not mention several other events in his original complaint. In similar circumstances, courts commonly construe amended complaints as supplements to the original complaint. See, e.g., Jackson v. NYS Dep't of Lab., 709 F. Supp. 2d 218, 222 n.1 (S.D.N.Y. 2010); Pianoforte v. Little Red Sch. House, No. 21-CV-5003 (ER), 2022 WL 2713659, at *1 n.2 (S.D.N.Y. July 13, 2022) ("Since *pro se* civil rights complaints should be read with generosity," [plaintiff's] complaint "must be given the benefit of incorporation.'" (quoting Camarano v. City of New York, 624 F. Supp. 1144, 1147-48 (S.D.N.Y. 1986)). The Court did not explicitly state that it would consider plaintiff's amended complaint as a supplement until after defendants filed their motion to dismiss. ECF No. 35. Even so, defendants' failure to address the allegations in plaintiff's original complaint is inexplicable.

However, defendants are correct that plaintiff's conspiracy allegations are insufficient to state a claim. Plaintiff alleges in both his original complaint and amended complaint (ECF No. 21) that defendants ADA Chachura and Cossuto "discussed and decided" certain matters related to his DWI prosecution: plaintiff's Fourth Amendment claims related to the blood test, his disability that

---

[12] Defendants' premotion conference request, filed before plaintiff filed his amended complaint, contains more detailed arguments about plaintiff's original complaint. ECF No. 17. However, the Court will not address those arguments because they were not included in defendants' motion to dismiss. Under Fed. R. Civ. P. 7(b)(1), motions to dismiss must "state with particularity the grounds" on which they seek dismissal. This ensures that a non-moving party can "muster his best argument" against the motion. Schlesinger Inv. P'ship v. Fluor Corp., 671 F.2d 739, 742 (2d Cir. 1982); see also People United for Child., Inc. v. City of New York, 108 F. Supp. 2d 275, 301 n.21 (S.D.N.Y. 2000) (declining to consider argument raised only in a footnote in defendants' opening brief).

prevented him from being able to hear what was happening in court, and the allegedly "unlawful[] representation" plaintiff received from Brooklyn New York Legal Aid. ECF No. 21 ¶ 4.[13]

Liberally construed, plaintiff alleges that defendants Chachura and Lorenzi conspired with his attorney Cossuto to deprive him of his constitutional rights. To state a § 1983 conspiracy claim, plaintiff must allege "(1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." D'Angelo-Fenton v. Town of Carmel, 470 F. Supp. 2d 387, 397 (S.D.N.Y. 2007) (citation omitted). To prevail on this claim, plaintiff must prove both the conspiracy and "an *actual deprivation* of a constitutional right." Id. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir.1993)). Similarly, allegations of "[c]ommunications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient" to state a conspiracy claim. Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005).

Plaintiff fails to allege a plausible conspiracy. Plaintiff alleges that defendants Cossuto (his attorney) and ADA Chachura agreed to keep certain matters "buried." ECF No. 21 ¶ 4. As an initial matter, these "allegations of conspiracy ring especially hollow in light of the adversarial relationship between" defense attorney Cossuto and ADA Chachura. Ciambriello, 292 F.3d at 324. Plaintiff does not identify any overt act taken in furtherance of the alleged conspiracy. The only acts that plaintiff alleges are defendant Cossuto's decision *not* to raise arguments regarding certain

---

[13] In plaintiff's putative second amended complaint, plaintiff also alleges that defendant Lorenzi asked Cossuto to help them convict McCloud, and Cossuto agreed to do so. ECF No. 31 at 8.

issues. These alleged "failures in performance by his attorney[]" do not "plausibly support a claim that [his attorney] acted as a part of a conspiracy with the prosecutors." Nealy v. Berger, No. 08-CV-1322 (JFB)(AKT), 2009 WL 704804, at *7 (E.D.N.Y. Mar. 16, 2009) (dismissing conspiracy claims); cf. Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc., 850 F.2d 876, 881 (2d Cir. 1988) (finding conspiracy adequately pled where private actor allegedly "hired private investigators and placed [plaintiff] under surveillance in violation of his constitutional rights").[14] Accordingly, plaintiff's § 1983 conspiracy claim should be dismissed.

Furthermore, any conspiracy claim under 18 U.S.C. § 241 should be dismissed because there is no private right of action under § 241. Hill v. Didio, 191 F. App'x 13, 14 (2d Cir. 2006) (summary order).

### III.    Plaintiff's False Arrest and Malicious Prosecution Claims Should Be Dismissed

Plaintiff's false arrest claim should be dismissed as abandoned. Plaintiff alleges that defendant Lorenzi arrested him and caused him to be jailed for one day without probable cause. ECF No. 1 at 5. On its face, this states a claim for false arrest. To allege false arrest under section 1983, "a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021). However, plaintiff states in response to defendants' motion that he is not "claiming false arrest or false imprisonment." ECF No. 31 ¶ 1. In light of plaintiff's clearly expressed intent

---

[14] Plaintiff also alleges that Cossuto said various things to him to convince him to plead guilty. ECF No. 1 at 3-5. Even if these allegations plausibly alleged a conspiracy, Cossuto's alleged actions would imply that plaintiff's guilty plea was invalid. Therefore, any claims arising from these allegations are barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Luck v. Westchester Med. Ctr., No. 17-CV-9110 (NSR), 2020 WL 564635, at *7 (S.D.N.Y. Feb. 4, 2020) (finding that Sixth Amendment claim "would necessarily implicate the invalidity" of her guilty plea). For a more detailed discussion of Heck, see infra Part III.

to abandon this claim, plaintiff's false arrest claim should be dismissed. See Bravo v. U.S. Marshals Serv., 684 F. Supp. 3d 112, 122 (S.D.N.Y. 2023).[15]

Furthermore, plaintiff's false arrest claim would be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that a plaintiff who was previously convicted of a crime cannot bring a § 1983 claim that would necessarily imply that the plaintiff's conviction was invalid, unless the plaintiff's conviction is first invalidated. Id. Heck's rule also applies to convictions resulting from guilty pleas. See Chapman v. Fais, 540 F. Supp. 3d 304, 306 (E.D.N.Y. 2021).[16] Here, plaintiff pled guilty to a DWI charge. ECF No. 31 ¶ 7.[17] Heck's rule means that any of plaintiff's claims that imply that his DWI conviction was invalid – for example, a claim that the results of his blood test were inaccurate – must be dismissed. See Luck v. Westchester Med. Ctr., No. 17-CV-9110 (NSR), 2020 WL 564635, at *8 (S.D.N.Y. Feb. 4, 2020).

False arrest claims are not necessarily barred by Heck: a false arrest claim would not be barred "if there were independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest." Covington v. City of New York, 171 F.3d 117, 123 (2d Cir. 1999). Conversely, a false arrest claim would be barred if "the *only* evidence for conviction was obtained pursuant to [the allegedly false] arrest." Id. Here, the only evidence underlying

---

[15] Even if plaintiff had not abandoned his false arrest claim, the claim should be dismissed. Probable cause "is an absolute defense to a false arrest claim." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013). While plaintiff conclusorily states that Lorenzi lacked probable cause to arrest him, plaintiff does not plead any facts supporting this claim. See Coyle v. Coyle, 153 F. App'x 10, 11 (2d Cir. 2005) (affirming dismissal where *pro se* plaintiff "failed to allege any facts supporting his claim that the police officers who arrested him lacked probable cause"); Smith v. Rossini, No. 19-CV-323 (MKB), 2020 WL 9816016, at *4 (E.D.N.Y. Nov. 30, 2020) ("A conviction of the plaintiff following the arrest 'necessarily establishes probable cause' . . . even where the conviction arises from a guilty plea." (citation omitted)). Indeed, in the arrest report, defendant Lorenzi states that he was flagged down by a witness "who stated defendant struck multiple motor vehicles and left the scene." ECF No. 26-2 at 3. While the Court does not assume that this statement is true, this suggests that Lorenzi had probable cause.

[16] Plaintiff alleges that he was sentenced to three years of probation at some time in 2023. ECF No. 1 at 2-3. Therefore, he remains "in custody" for purposes of Heck. Webster v. Himmelbach, 271 F. Supp. 3d 458, 469 (W.D.N.Y. 2017).

[17] Plaintiff clarified this in his opposition to defendants' motion to dismiss, but as this allegation is "consistent with the allegations in [plaintiff's] complaint," the Court may consider it for purposes of the instant motion. Pianoforte v. Little Red Sch. House, No. 21-CV-5003 (ER), 2022 WL 2713659, at *1 (S.D.N.Y. July 13, 2022).

plaintiff's prosecution apparently came from his February 2, 2023 arrest. Accordingly, any false arrest claim would be barred by Heck. See also Wallace v. Kato, 549 U.S. 384, 394 (2007).

Relatedly, any malicious prosecution claim should be dismissed for failure to state a claim.[18] To state a malicious prosecution claim under New York law or section 1983, "a plaintiff must show '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] and (4) actual malice.'"[19] Alexander v. City of Syracuse, 132 F.4th 129, 158 (2d Cir. 2025) (citation omitted). Plaintiff cannot show that his DWI prosecution was terminated in his favor because he pled guilty. Smith v. Rossini, No. 19-CV-323 (MKB), 2020 WL 9816016, *6 (E.D.N.Y. Nov. 30, 2020).

## IV.    Plaintiff's Unreasonable Search and Seizure Claim Should Not Be Dismissed

Plaintiff's alleges that after he was arrested, defendants Lorenzi and Hashmi used force to inject him with sedatives that "knocked him out" and then drew his blood without his consent. Plaintiff does not cite the Fourth Amendment, but construing plaintiff's complaint liberally, "the Court assumes that Plaintiff is also raising a Fourth Amendment claim based on the blood draw." Luck v. Westchester Med. Ctr., No. 17-CV-9110 (NSR), 2020 WL 564635, at *6 (S.D.N.Y. Feb. 4, 2020). The Fourth Amendment protects "the right of the people" to be free from "unreasonable searches and seizures." Blood tests are "searches" under the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 770 (1966). Generally, warrantless searches are unreasonable unless they

---

[18] The Court need not reach defendants' argument that plaintiff's malicious prosecution claim should be dismissed pursuant to Heck because plaintiff's allegations fail to state a malicious prosecution claim. Teichmann v. New York, 769 F.3d 821, 831 (2d Cir. 2014) (Calabresi, J., concurring) ("When there are non-controversial, non-*Heck* grounds for ruling, we and district courts would be well advised to decide on those grounds rather than needlessly on *Heck* ones.").

[19] A § 1983 claim for malicious prosecution requires the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Id. (citation omitted).

fall within a recognized exception to the Fourth Amendment's warrant requirement. Kentucky v. King, 563 U.S. 452, 459-60 (2011).

Defendants proffer three alternative reasons why the warrantless blood draw was reasonable: (1) plaintiff explicitly consented to the blood draw, (2) the blood draw was a lawful search incident to an arrest, or (3) plaintiff implicitly consented by driving in New York pursuant to N.Y. Veh. & Traf. Law § 1194(2)(a). Defendants first claim that body worn camera video shows plaintiff explicitly consenting, verbally and in writing, to have his blood drawn. ECF No. 26 at 12. Plaintiff disputes this. ECF No. 31 ¶¶ 8, 11. For reasons discussed above, the Court should not consider the body worn camera videos for purposes of the instant motion.[20] At this juncture, the Court must take as true plaintiff's allegation that he did not consent to the search.

Defendants argue in the alternative that they did not need plaintiff's explicit consent under the circumstances. Defendants argue broadly that "procurement of a blood sample constitutes a lawful search incident to arrest for driving while intoxicated." ECF No. 26 at 12 (citing D'Angelo-Fenton v. Town of Carmel Police Dep't, 470 F. Supp. 2d 387, 396 (S.D.N.Y. 2007) and Schmerber, 384 U.S. at 770-71). However, the Supreme Court has held that "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." Birchfield v. North Dakota, 579 U.S. 438, 476 (2016). Schmerber likewise held that blood tests, as "intrusions into the human body," require a warrant "absent an emergency," even if the blood test was conducted incident to a lawful drunk-driving arrest. 384 U.S. at 770. This reflects the "exigent circumstances" exception to the Fourth Amendment's warrant requirement, which "applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is

---

[20] Plaintiff is cautioned, however, that if defendants move for summary judgment in the future, the Court will consider the videos and his version of events will not be credited if it is "blatantly contradicted" by the body worn camera videos. Scott v. Harris, 550 U.S. 372, 380 (2007).

objectively reasonable under the Fourth Amendment." Kentucky v. King, 563 U.S. at 460 (citation and internal quotation marks omitted).

Two Supreme Court decisions address the "exigent circumstances" exception in situations similar to plaintiff's case. In Missouri v. McNeely, 569 U.S. 141 (2013), the Supreme Court rejected Missouri's argument that "the natural metabolization of alcohol in the blood stream," leading to loss of evidence of a driver's intoxication, "presents a *per se* exigency that justifies" such searches. Id. at 145. Rather, the Court held that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." Id. at 152. Whether a sufficient exigency exists to overcome the warrant requirement "must be determined case by case based on the totality of the circumstances." Id. at 145.

The Court then held in Mitchell v. Wisconsin, 588 U.S. 840, 843 (2019), that

> [w]hen police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC [blood alcohol concentration] without offending the Fourth Amendment.

Id. at 857. Mitchell explicitly "[did] not revisit" McNeely's holding that exigency must be determined case-by-case. Mitchell, 588 U.S. at 849. However, Mitchell reasoned that "exigency exists when (1) BAC evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application," and that "[b]oth conditions are met when a drunk-driving suspect is unconscious." Id. at 854.

This does not foreclose plaintiff's claim for two reasons. First, Mitchell addressed a situation in which the motorist was "too lethargic even for a breath test" by the time police took him to the station, and the Court reasoned that this "unconsciousness does not just create pressing

needs; it is *itself* a medical emergency" justifying the blood draw. Id. at 845, 854. Here, plaintiff alleges that defendants took him to the hospital and injected him with a sedative to render him unconscious.[21] Moreover, Mitchell noted that in some cases, a motorist "would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." Id. at 857. The Mitchell Court therefore remanded the case to permit the motorist the opportunity to make that showing. Id. Accordingly, plaintiff's claim regarding the blood draw should not be dismissed. There is nothing in the record to reflect that defendants would have drawn plaintiff's blood for any reason aside from testing his BAC. Furthermore, defendants make no argument that the officers determined that seeking a warrant would interfere with other pressing needs.

Finally, plaintiff's complaint should not be dismissed based on plaintiff's alleged implicit consent pursuant to N.Y. Veh. & Traf. Law § 1194(2)(a). Section 1194(2)(a) provides that "[a]ny person who operates a motor vehicle in [New York] state shall be deemed to have given consent to a chemical test of one or more of the following: breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of the blood . . . ." Blood tests based on implicit consent must be taken within two hours of the motorist's arrest or a field breath test, whichever is later. Id.; see People v. Zawacki, 244 A.D.2d 954 (4th Dept. 1997). The statute also provides that motorists may revoke their consent after being informed that their driver's license will be revoked as a consequence of their refusal of the blood test. N.Y. Veh. & Traf. Law § 1194(2)(b). The

---

[21] Put differently, plaintiff alleges that defendants created any exigent circumstance posed by his unconsciousness. If unreasonable police action creates the exigency that police then rely on to justify a warrantless search, the search itself is unreasonable. Kentucky v. King, 563 U.S. 452, 462 (2011) (discussing the "police-created exigency" doctrine). Plaintiff alleges that defendants used force to sedate him. ECF No. 21 ¶ 2. Whether defendants' use of force was reasonable is fact-specific, and on this record the Court cannot find that defendants' actions were justified. See Jackson v. City of Syracuse, No. 20-CV-1215 (GTS)(ML), 2021 WL 3710494, at *7 (N.D.N.Y. Aug. 20, 2021) (denying motion to dismiss against defendant officer who allegedly "constrained" plaintiff and "administered a sedative drug" against plaintiff's wishes at the hospital following a traffic stop); see infra Part VI.

statute's conditional right of refusal "is designed to encourage those suspected of alcohol-related driving offenses to comply with requests to submit to chemical tests in order to obviate the need for securing court orders authorizing blood tests or the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test." People v. Odum, 31 N.Y.3d 344, 348-49 (2018). Under the statute, an unconscious motorist need not be given "the opportunity to revoke his consent." People v. Kates, 53 N.Y.2d 591, 596 (1981).

Section 1194(2)(a) does not foreclose plaintiff's Fourth Amendment claim. First, plaintiff alleges that defendants sedated him prior to drawing his blood. This is far from the situation considered in Kates, in which the motorist was "so disoriented" due to the injuries he sustained in a car accident "as to be incapable of giving or refusing consent to a blood test." Id. at 593. Second, the statute requires that blood samples based on implicit consent be taken within two hours of an arrest or breath test. It is not clear that this condition was met in the instant case. Most importantly, the Supreme Court has never held that such implied consent statutes justify warrantless blood draws.[22] Indeed, the Court granted certiorari in Mitchell "to decide whether Wisconsin drivers impliedly consent to blood alcohol tests thanks to a state statute" analogous to New York's, but the Court "decline[d] to answer" that question. Mitchell, 588 U.S. at 878 (Gorsuch, J., dissenting); see also id. at 867 (Sotomayor, J., dissenting) (arguing that "the state statute, however phrased, cannot itself create the actual and informed consent that the Fourth Amendment requires"). Assuming, as the Court must on a motion to dismiss, that plaintiff's allegations are true, the Court should not find that any statutorily implied consent justifies the nonconsensual blood draw in this case. In sum, plaintiff has plausibly alleged that defendants violated his Fourth Amendment rights

---

[22] Defendants cite Vazquez v. Marciano, 169 F. Supp. 2d 248, 253 (S.D.N.Y. 2001), for the proposition that "[t]he law is clear" that nonconsensual blood draws from unconscious motorists can be conducted "without any constitutional violation's [sic] being committed." ECF No. 26 at 13. As discussed above, the law is far from clear on this point. Vazquez was decided before Mitchell and McNeely, and defendants fail to cite either of these Supreme Court cases.

by taking his blood sample without his consent.[23] Therefore, defendant Lorenzi's motion to dismiss this claim should be denied.

## V.    Any Due Process Claim Based on the Blood Draw Should Be Dismissed

Plaintiff asserts that defendants violated his Fifth and Fourteenth Amendment rights.[24] Defendants correctly argue that any due process claim based on plaintiff's blood draw should be dismissed. The Second Circuit has emphasized that claims related to blood tests should not be analyzed under "the rubric of substantive due process," but rather under the Fourth Amendment. Makas v. Miraglia, 300 F. App'x 9, 10 (2d Cir. 2008) (summary order) (vacating dismissal of plaintiff's excessive blood tests claim analyzed under due process standard and directing district court to analyze the claim under the Fourth Amendment). Accordingly, the Court should dismiss any Fifth or Fourteenth Amendment claims (substantive or procedural) arising from the blood draw.[25]

## VI.    Plaintiff's Excessive Force Claim Should Not Be Dismissed

Plaintiff alleges that defendant Lorenzi "held [his] right arm so [he] could not move" while defendant Hashmi injected him with a sedative, and then took a sample of his blood "by force." Am. Compl., ECF No. 21 ¶ 2. In response to defendants' motion to dismiss, plaintiff further alleges

---

[23] Heck does not bar this claim. Luck v. Westchester Med. Ctr., No. 17-CV-9110 (NSR), 2020 WL 564635, at *7 (S.D.N.Y. Feb. 4, 2020) ("The invalidity of the procedures by which Plaintiff's blood was obtained will not demonstrate the invalidity of her conviction, particularly because her conviction was based upon her guilty plea."). However, plaintiff may not recover damages for this claim that result from "the 'injury' of being convicted and imprisoned." Heck, 512 U.S. at 487 n.7. Accordingly, plaintiff may "attempt to recover damages from the loss of privacy and/or property [he] suffered as a result of the blood draw," but any alleged damages arising from his DWI prosecution or conviction are barred by Heck. Luck, 2020 WL 564635 at *7.

[24] The Court assumes that plaintiff refers to the Fifth Amendment only as part of his due process claim. To the extent that plaintiff claims that his Fifth Amendment right against self-incrimination was violated, this claim fails because a blood draw is not testimonial. Schmerber v. California, 384 U.S. 757, 765 (1966).

[25] In response to defendants' motion to dismiss, plaintiff alleges for the first time that the injection of sedatives "gave a false reading in the blood test." ECF No. 31 ¶ 23. As this is not consistent with the allegations in plaintiff's complaint, the Court need not consider this claim. See Pianoforte v. Little Red Sch. House, No. 21-CV-5003 (ER), 2022 WL 2713659, at *1 (S.D.N.Y. July 13, 2022). In any event, this claim would be barred by Heck. See Luck v. Westchester Med. Ctr., No. 17-CV-9110 (NSR), 2020 WL 564635, at *8 (S.D.N.Y. Feb. 4, 2020) ("Claims alleging denial of the right to a fair trial through the fabrication of evidence imply the invalidity of any underlying criminal convictions and are precluded by Heck.").

that defendants "used physical brutal force" during this incident, leaving his arms "blue, purple, red and black." ECF No. 31 ¶ 8.[26] Plaintiff's allegations raise an excessive force claim under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . .").[27]

Defendants' motion to dismiss does not address plaintiff's excessive force claim, and the Court should not dismiss it. Therefore, defendant Lorenzi's motion to dismiss plaintiff's excessive force claim should be denied.

## VII.    Defendants Cossuto and Hashmi Should Be Dismissed for Failure to Serve

*Pro se* plaintiff filed the complaint in this action on May 7, 2024 and paid the filing fee. ECF Nos. 1-2. Plaintiff is therefore responsible for serving defendants with process. However, plaintiff has not filed proof of proper service on defendants Mark S. Cossuto and Omar Hashmi. Thus, the Court should dismiss plaintiff's claims against Hashmi and Cossuto without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

---

[26] As discussed above, the Court may consider these allegations, which are "consistent with the allegations in [plaintiff's] complaint," for purposes of the instant motion. Pianoforte, 2022 WL 2713659 at *1.

[27] As discussed in Graham, claims for excessive force by a convicted plaintiff are governed by the Eighth Amendment. 490 U.S. at 394 (citing Whitley v. Albers, 475 U.S. 312, 318-326 (1986)). Plaintiff purports to assert a claim under the Eighth Amendment, ECF No. 1 at 1, but as plaintiff was not convicted at the time he alleges defendants used excessive force, his complaint does not implicate the Eighth Amendment. Plaintiff alleges that defendant Cossuto (his lawyer) failed to address an error in plaintiff's "Finerprint Response Summary" (sic) that caused plaintiff to receive a "very harsh" sentence for his DWI charge. ECF No. 1 at 3. However, this allegation does not raise an Eighth Amendment claim but comes in the context of plaintiff's ineffective assistance of counsel claim against defendant Cossuto.

Fed. R. Civ. P. 4(m). Rule 4(*l*) provides that "[u]nless service is waived, proof of service must be made to the court. Except for service by a United States Marshal or deputy marshal, proof must be by the server's affidavit." The Court notified plaintiff that pursuant to Rule 4(m), he was required to serve defendants and file proof of proper service with the Court by August 5, 2024. ECF No. 5. The Court warned plaintiff that if he failed to properly serve defendants by that date, or failed to show good cause why such service was not timely effected, the action would be dismissed without prejudice. Id.

On July 29, 2024, the summons for defendant Omar Hashmi was returned unexecuted, as "service was denied" at the address plaintiff provided. ECF No. 8. In light of plaintiff's *pro se* status and his attempt to serve Hashmi, the Court ordered plaintiff to provide the Clerk of Court with an address where Hashmi could be served by August 22, 2024 and *sua sponte* extended plaintiff's time to serve Hashmi with an amended summons by September 13, 2024. ECF No. 10. On August 23, 2024, the Court reminded plaintiff of the deadline to serve defendant Hashmi and again warned plaintiff that failure to do so would result in dismissal. ECF No. 16. However, plaintiff did not provide another address for defendant Hashmi or show good cause why he failed to serve Hashmi.[28] Accordingly, the Court should dismiss plaintiff's claims against Hashmi without prejudice pursuant to Rule 4(m).

On July 29, 2024, plaintiff returned the summons for Cossuto as executed. ECF No. 9. However, the process server's affidavit did not reflect proper service. See ECF No. 23. In light of plaintiff's attempt to serve Cossuto, the Court extended plaintiff's time to serve Cossuto until

_____

[28] On September 23, 2024, the Court mistakenly stated that Hashmi had filed a pre-motion letter regarding a proposed motion to dismiss. See ECF Order dated September 23, 2024; ECF Order dated October 8, 2024 (modifying prior order). However, this did not cause prejudice to plaintiff. He previously responded to the pre-motion conference request acknowledging that it was filed by defendant Michael Chachura. ECF No. 19. Moreover, the Court's misstatement occurred after plaintiff's deadline to serve Hashmi had passed.

December 2, 2024. Id. On November 20, 2024, plaintiff filed an "amended complaint in regards to defendant Mark S. Cossuto," ECF No. 29, and on November 27, 2024, plaintiff requested an extension of time to serve Cossuto. ECF No. 30. The Court rejected plaintiff's purported second amended complaint, ordered plaintiff to file any motion to amend his complaint by December 20, 2024, and stayed plaintiff's deadline to serve Cossuto. ECF No. 32. After plaintiff did not move to amend his complaint, the Court ordered plaintiff to serve Cossuto by January 31, 2025. ECF No. 35. Plaintiff did not file proof of service on Cossuto, but on March 3, 2025, plaintiff filed "objections and oppositions to defendant Cossuto's answer(s)." ECF No. 37. The Court ordered plaintiff to file proof of service on Cossuto by March 18, 2025. ECF No. 38. In response, plaintiff filed a letter stating that "Defendant Cossuto was served a copy of the complaint" and that Cossuto sent plaintiff "a copy of his answer." ECF No. 39. Plaintiff attached Cossuto's answer (which was never filed with the Court) to the amended complaint as an exhibit, but plaintiff never filed proof of proper service on Cossuto as the Court had ordered. Id. The Court gave plaintiff "a final chance to file proof of proper service on defendant Cossuto" by April 4, 2025. ECF No. 40 (citing Fed. R. Civ. P. 4(*l*) and 4(m)). On April 2, 2025, plaintiff wrote to "respectfully oppose/object to" the Court's Order at ECF No. 40, stating that he "stand[s] firm on [his] letter" at ECF No. 39. ECF No. 41.

However, as the Court explained to plaintiff, plaintiff never filed proof of service stating when and how Cossuto was served. See ECF No. 40. The Court gave plaintiff ample time to serve Cossuto and warned him numerous times that his claims against Cossuto would be dismissed if he did not file proof of proper service on Cossuto. See ECF Nos. 5, 23 (discussing proper methods of service), 35, 38, and 40 (discussing proof of proper service). Plaintiff clearly understood how to file proof of service. See ECF No. 8 (proof of service on defendants Chachura and Lorenzi); ECF No. 28 (plaintiff's letter to process server requesting affidavit of service). The Court made

"deliberate, continuing efforts to ensure that [plaintiff] understands what is required of him." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010). However, plaintiff failed to comply with the Court's Orders directing him to file proof of proper service on defendant Cossuto.[29] Accordingly, I respectfully recommend that plaintiff's claims against defendant Cossuto should be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).[30]

## CONCLUSION

It is respectfully recommended that defendants Lorenzi and Chachura's motion to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should be granted in part and denied in part. Plaintiff's § 1983 false arrest claim, any § 1983 malicious prosecution claim, and any § 1983 Fifth or Fourteenth Amendment claims arising from plaintiff's blood draw should be dismissed with prejudice. Plaintiff's conspiracy claims against all defendants under § 1983 and 18 U.S.C. § 241 should also be dismissed with prejudice. Plaintiff's claims against defendants Hashmi and Cossuto should be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m). Defendant Lorenzi's motion to dismiss plaintiff's § 1983 Fourth Amendment claims for unreasonable search and seizure and excessive force should be denied. As plaintiff has already amended his complaint, plaintiff should not be granted leave to amend his complaint again. See Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).

---

[29] The Court has no idea why defendant Cossuto, an attorney, would send plaintiff an answer but not file it with the Court. The question need not be answered because even if plaintiff served Cossuto, this does not excuse plaintiff from his obligation to comply with procedural rules and the Court's Orders. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) ("*[P]ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law' . . . ." (citation omitted)).

[30] In any event, plaintiff fails to state claims under § 1983 against defendant Cossuto. Attorneys such as Cossuto are generally not state actors, and as such cannot be sued under § 1983. Sklodowska-Grezak v. Stein, 236 F. Supp. 3d 805, 809 (S.D.N.Y. 2017). As discussed in Part II above, plaintiff has not plausibly alleged a § 1983 conspiracy involving Cossuto. Furthermore, ineffective assistance of counsel is not a claim that can be made under § 1983. See Bourdon v. Loughren, 386 F.3d 88, 90 (2d Cir. 2004).

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physicians' Health Plan, Inc.</u>, 293 F.3d 42, 46 (2d Cir. 2002); <u>Small v. Sec'y of Health & Hum. Servs.</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: May 14, 2025
       Brooklyn, New York